**FORD v CINCINNATI (city) et**

Common Pleas Court, Hamilton Co

Decided June 13, 1939

Bert H. Long, Cincinnati, for appellant.

John D. Ellis, city solicitor, Cincinnati, and J. B. Grause, Jr.. asst. solicitor, Cincinnati, for appellees.

**OPINION**

By MORROW, J.

Clarence L. Ford, appellant herein, was a member of the police department of Cincinnati for more than ten years, had attained the rank of lieutenant, and on September 4, 1937. after a hearing before the city manager of Cincinnati, was dismissed from the police department on certain charges. He notified the Civil Service Commission of that city of his intention to appeal from the order of the city manager, and the hearing on appeal to that commission was had September 24th of the same year. The Civil Service Commission after its hearing, sustained the action of the city manager, in dismissing said Ford from the police department, and from the Civil Service Commission's finding said Clarence Ford has appealed to this court.

In his prayer the appellant Ford asks that he be reinstated to his position as lieutenant of police, and that the findings against him, above mentioned, be reversed. It is agreed by counsel that this proceeding is pursuant to the terms of §486-17a, GC. The grounds for removal are broad, as set forth in this section, (quoting in part:)

"That any officer, employee or subordinate may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior; or any other acts of misfeasance, malfeasance or non-feasance in office."

This is the first case we have considered which has been passed upon by two other authorities.

I

The charges before the city manager were stated as follows:

"Conduct unbecoming a member of the police department. Consorting with a common prostitute," then follow certain specifications.

It will serve no good purpose to set forth the specifications.

It seems that when this officer was in civilian clothes, and not at the time under direct orders, that he stopped his private automobile and invited a prostitute, who bore the sinister name of Lucretia, to join him in a ride. She, at the time, was walking on the north side of Thirteenth street, from which place he drove her to an old stone quarry on the east side of Highland avenue south of Dorchester street a distance of several miles. He was not a country boy, and the circumstances, the actions of the two, and what transpired later in-

dicates that he must have known she was a loose woman. There he was discovered in a compromising position by certain detectives of the vice squad, and the testimony in the record, (including his own admissions) on pages 3, 10, 13, 16, 21, 24, 25, 29, 30 and 31, is more than sufficient to prove ▓▓▓▓▓ ▓ immoral conduct, as that term is defined by the dictionaries, and as follows:

The Oxford Dictionary defines "immoral" as:

"Not conforming to moral law or requirements; morally evil or impure; dissolute. (Often used specifically of sexual impurity.)"

The Century Dictionary:

"Unprincipled; not conforming to or consistent with the moral law; dissolute; licentious."

There is also quoted from Rapalje & Lawrence's Law Dictionary the following:

"When we call a thing immoral, in a legal sense, we do not mean so much that it is ethically wrong as that, according to the common understanding of reasonable men, it would be a scandal for a court of justice to treat it as lawful or indifferent, though the transaction may not come within positive prohibition or penalty."

Webster's Unabridged Dictionary:

"Inconsistent with purity; wicked; vicious; licentious, synonymous with indecent; depraved; dissolute."

"Conduct" as defined by Webster's Unabridged Dictionary is:

"Personal deportment; behavior; mode of guiding or carrying oneself; mode of moral action."

I do not consider it necessary or proper to quote the pages of the record above mentioned:—suffice to say that the testimony of Colonel Weatherly, Colonel Adams, and Major Kirgan, men of high position in the Cincinnati police department, contains admissions of the appellant herein, and before these three officers, which tacitly concede guilt.

## II

The last line of the quotation of grounds for removal first above quoted, (§486-17a,) and ending with the words "in office" might make it appear that the immoral conduct must be confined to immoral conduct in office. Do the words "in office" modify all the preceding paragraphs?

An old case, **Graham v Stein, 18 O. C. C., 770, 4 Ohio Decisions, 140,** would make it appear that a statute of this sort refers to misconduct as an officer in an official cacacity, and not personal misconduct. However, the attorney general's opinion, 1927, authorizes the discharge of an employee who refused to pay his just debts. This is called "failure of good behavior." See Attorney General Opinions 1927, p. 2416.

This statute would be a weak foundation stone for the establishment of an upright public service if a public servant could be as dishonest, drunk, or immoral, as he pleased off duty, and no matter how scandalous such conduct in the eyes of his neighbors and fellow citizens. However, it is not necessary for us to take this broad view of the situation because a policeman is like a soldier in the sense that ▓▓▓▓▓ ▓ he is always on duty. In this case, though "off duty" Ford was "in office" at the time of the alleged immoral conduct.

## III

As pointed out in the opinion of the Civil Service Commission, and with reference to the duties of a policeman in the manual of the Cincinnati police department on page 71. under "Instructions for Patrolmen," there appears the following sentence:

"His authority must be exercised whenever circumstances require, wheth-

er he is in uniform and on active duty or not."

It will be noted in the transcript that the appellant testified that at the time of the occurrence complained of in the charges that he carried a pistol. See page 33. In short, a policeman has the duty of preserving peace at all times, and, in a qualified sense, he is on duty just as is a soldier, twenty-four hours a day. It would be ridiculous for a soldier to disregard a call to arms on the plea that he has just been relieved of guard-duty. It would be just as ridiculous for a policeman to ignore a highway robbery or other violation of law in his presence on the ground that he was off duty.

It is fair to assert therefore that Lieutenant Ford was on duty at the time of the transaction complained of, and the evidence indicates that he then was consorting with a prostitute who was under the surveillance of the vice squad at the time, and. with her, he was guilty of immoral conduct as well as "failure of good behavior."

The action of the city manager and the commission are sustained on the ground that the appellant here was guilty of immoral conduct in office, and "failure of good behavior."